```
               IN THE UNITED STATES DISTRICT COURT FOR THE
                       EASTERN DISTRICT OF VIRGINIA
                            ALEXANDRIA DIVISION


KURT RAHRIG,                     )
                                 )
          Plaintiff,             )
v.                               )     CIVIL ACTION NO. 04-1545
                                 )
ALCATEL USA MARKETING,           )
INC., et al.,                    )
                                 )
          Defendants.            )
```

## MEMORANDUM ORDER

THIS MATTER is before the Court on Plaintiff Kurt Rahrig's Motion to Dismiss Defendant Alcatel USA Marketing's Counterclaim. This case concerns a dispute about the plaintiff's employment contract and the correct interpretation of two particular clauses.  The issues before the Court are (1) whether Defendant's Counterclaim for declaratory judgment on the meaning of the Windfall Clause and the Internal Dispute Resolution Clause is a mirror image of Plaintiff's Amended Complaint for breach of the Windfall Clause, and (2) if so, whether the Court should dismiss the Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court grants Plaintiff's Motion to Dismiss Defendant's Counterclaim because it mirrors the Amended Complaint and will be rendered moot by a decision on the merits of Plaintiff's Amended Complaint.

## I. BACKGROUND

### *A. Plaintiff's Allegations and Counts*

Plaintiff Kurt Rahrig ("Plaintiff," "Mr. Rahrig") entered

into a written contract with Defendant Alcatel USA Marketing[1] ("Defendant," "Alcatel") with provisions, *inter alia*, for base salary, sales quota, and target incentive bonuses.  Pl.'s Am. Compl. at ¶¶ 4-5.  The contract also has a "Sales Credit Adjustment" section that includes the disputed "Windfall Clause":

> In the event that a windfall situation occurs in which effort expended or involvement of the sales representative is not proportional to revenue that would be derived at current quota or commission rates from an exceptionally large opportunity relative to quota, regional management reserves the right to adjust quota, or sales credit allocated for that transaction and thereafter.

*Id.* at ¶ 7.  Another relevant clause states that Defendant "reserves the right, at the sole discretion of Management on 30 days notice, to adjust and modify this Plan, including individual quotas . . . as it deems necessary or appropriate."  *Id.* at ¶ 8.

On November 22, 1999, the defendant sent Mr. Rahrig a letter notifying him that management intended to adjust his sales quota:

> As we have discussed, the sales credit that you derived from sales to New Edge Networks is deemed a windfall as defined on p. 3 of the U.S. Sales Compensation Plan Fiscal Year 2000.  Accordingly, we intend to exercise the Company's right to adjust your quota for the current fiscal year . . .
>
> Nevertheless, we want to recognize your substantial success from last quarter promptly.  Therefore, Newbridge will make

---

[1] Plaintiff technically contracted with Newbridge Networks, Inc., a Canadian corporation.  On October 1, 2000, Defendant Alcatel USA Marketing, Inc. acquired substantially all of the assets and liabilities of Newbridge Networks, Inc.  Although Plaintiff's Amended Complaint names both Alcatel USA Marketing, Inc. and Alcatel USA, Corp. as Defendants, the Counterclaim only names Defendant Alcatel USA Marketing, Inc.  Therefore, this Opinion uses the singular "Defendant."

> a substantial commission payment to you in the gross amount of $200,000.00 USD on the commission run due 11/26/99 (or as soon thereafter as possible), provided you agree to the following terms.  This payment will be a sales credit payment as defined by and subject to all terms and conditions in the Compensation Plan.  Any additional payments or necessary adjustments will be made after a new quota is negotiated and agreed upon.

Def.'s Answer and Countercl. at 8-9.  On February 28, 2000, the defendant sent Mr. Rahrig a similar letter reiterating that Alcatel intended to adjust Mr. Rahrig's sales quota.  *Id.* at 10.  Plaintiff signed both letters and accepted $400,000.00.  *Id.* at 9-10.

Only two counts remain in Plaintiff's Amended Complaint.  In Count One, Mr. Rahrig alleges that Defendant's improper exercise of the Windfall Clause was a breach of their contract.  Pl.'s Am. Compl. at ¶ 28.  Plaintiff alleges that he achieved sales credits of $125,000,000.00 for FY2000 and that he earned as much as $12,576,829.59 in commission.  *Id.* at ¶¶ 10-11.  Mr. Rahrig alleges that by raising his quota from $2,925,000.00 to $44,093,333.00 for FY2000, a 1439% increase, Defendant improperly reduced Mr. Rahrig's commissions about 96% to $600,000.00.  *Id.* at ¶ 24.

Plaintiff alleges that the exercise of the Windfall Clause was improper for three reasons.  First, Mr. Rahrig alleges that the Windfall Clause only empowered regional management to adjust his quota "for that transaction and thereafter."  *Id.* at ¶ 7(b).  Plaintiff alleges that the exercise of the Windfall Clause

3

deprived him of commissions already earned for previous transactions.  *Id.* at ¶ 19.  Second, Mr. Rahrig alleges that because Defendant exercised the Windfall Clause more than 30 days after the November 22, 1999 letter (Pl.'s Am. Compl. Ex. B), the letter "cannot operate as a valid retroactive exercise of the Windfall Clause by Defendants."  *Id.* at ¶ 20.  Finally, Plaintiff alleges that the exercise of the Windfall Clause was improper because his efforts were proportional to the amount of commissions he allegedly earned.  *Id.* at ¶ 23.

In Count Four, Mr. Rahrig alleges that the Windfall Clause and the exercise of Windfall Clause are void unconscionable contracts.  *Id.* at ¶ 42.  Mr. Rahrig does not dispute that he signed both letters (Pl.'s Am. Compl. Ex. B & C) and accepted $400,000.00.  *Id.* at ¶¶ 12, 16.

### *B. Defendant's Allegations and Counterclaim*

Defendant alleges that the Interpretation and Dispute Resolution Clause sets forth a binding dispute resolution procedure.  Def.'s Answer and Countercl. at 7.  The Interpretation and Dispute Resolution Clause states:

> Disputes concerning the interpretation and application of the Plan shall be directed to the VP, U.S. Sales or designee.  In the event that the VP, U.S. Sales or designee is unable to resolve any disputes, the President and General Manager of a given region shall have the complete authority and discretion to interpret this Plan and to resolve any disputes regarding interpretation of this Plan.  Any such decisions shall be final and binding upon all parties involved.

*Id.* at 8.  Defendant alleges that Plaintiff did not follow the Interpretation and Dispute Resolution procedure in this case. *Id.* at 9.

Defendant also alleges that the plaintiff waived any right he might have had to dispute the exercise of the Windfall Clause because he signed two letters (Pl.'s Am. Compl. Ex. B & C) and accepted $400,000.00.  Def.'s Answer and Countercl. at 7. Defendant alleges that by signing each letter, Mr. Rahrig agreed that in exchange for $200,000.00, he would not challenge the exercise of the Windfall Clause.  *Id.* at 9.

Defendant's Counterclaim includes two counts.  Count One seeks a declaratory judgment that "its predecessor-in-interest, Newbridge, acted within its rights under the Windfall Clause of the Compensation Plain."  Def.'s Answer and Countercl. at 12. Count Two seeks a declaratory judgment that Plaintiff's

> (1) failure to utilize the Compensation Plan's
> Interpretation and Dispute Resolution procedures, (2)
> execution of the November 22, 1999 and February 28, 2000
> letter agreements, and (3) acceptance of $400,000.00 or more
> in consideration for agreeing and consenting to the
> adjustment of his quota and reduction of his commissions,
> effected a waiver of any right he otherwise might have had
> to seek payment for additional commissions for Fiscal Year
> 2000.

*Id.* at 13.

### C. Plaintiff's/Movant's Argument:

Plaintiff moves this Court to dismiss Defendant's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6)

5

for failure to state a claim. Pl.'s Mot. Dismiss at 1. Plaintiff alleges that Defendant "in reality seeks a declaratory judgment . . . as to the merits of plaintiff's claims and defendant's defenses in connection with their respective factual allegations and legal positions." *Id.* Although the plaintiff acknowledges that this Court has the sound discretion to grant or deny declaratory relief, Mr. Rahrig alleges that declaratory relief in this case is inappropriate because Defendant has no "reasonable apprehension of litigation." *Id.* at 2. Furthermore, Plaintiff alleges that Defendant's Counterclaim repeats the affirmative defenses. *Id.*

### D. *Defendant's/Non-movant's Argument:*

Defendant argues that the Counterclaim involves separate issues that will "not necessarily" be rendered moot by the resolution of Plaintiff's Amended Complaint. Def.'s Br. Opp'n Mot. Dismiss at 7. Defendant views Plaintiff's claim as merely a dispute about the correct interpretation of the Windfall Clause. *Id.* The separate issues, Defendant alleges, include the legal impact of Plaintiff's (1) failure to utilize the Interpretation and Dispute Resolution procedures, (2) execution of the November 22, 1999 and February 28, 2000 letter agreements, and (3) acceptance of $400,000.00. *Id.*

Alternatively, Defendant argues that even if the Counterclaim mirrors the Amended Complaint, many courts have allowed such counterclaims. *Id.* at 8. Defendant cites four

6

district court cases as support. *See Univ. Patents, Inc. v. Kligman*, 1991 U.S. Dist. LEXIS 11917, at *3 (E.D.Pa. Aug. 23, 1991)("[w]here the primary issue is one of contract interpretation, the courts are reluctant to dismiss a counterclaim for declaratory relief as redundant even when it is a near 'mirror image' of the complaint"); *A.G. Becker-Kipnis & Co. v. King Commodity Servs., Inc.*, 1983 U.S. Dist. LEXIS 18723, at *13 (N.D.Ill. March 8, 1983)("[m]ost courts recognize that a counterclaim for declaratory judgment, based upon essentially the same facts as the original claim, still is useful in protecting the defendant from harassment by dismissal of the action, and thus counterclaims of this kind are now commonly allowed"); *Iron Mountain Sec. Storage Co. v. Am. Specialty Foods, Inc.*, 457 F. Supp. 1158, 1161-62 (E.D.Pa. 1978)("[a] ruling adverse to plaintiff on plaintiff's claim would merely result in a judgment that plaintiff was not entitled to the relief requested; although it might logically follow from that judgment that defendants' interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one"); *England v. Deere & Co.*, 158 F. Supp. 904, 905 (S.D.Ill. 1958)("the rule seems now to be well settled that where a real controversy exists, a counterclaim for declaratory relief will not be dismissed merely because it repeats matters alleged in the answer as affirmative defenses to the complaint").

Third, Defendant argues that there exists an actual controversy that warrants the Counterclaim.  Def.'s Br. Opp'n Mot. Dismiss at 9.  Defendant interprets Plaintiff's allegation that there is no "apprehension of litigation" as alleging that the Counterclaim is not ripe.  *Id.*  Defendant contends that under Fourth Circuit caselaw, the question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *White v. Nat'l Union Fire Ins. Co.*, 913 F.2d 165, 167-68 (4th Cir. 1990).  Defendant alleges that there exists a "substantial controversy" regarding the Windfall Clause that is of "sufficient immediacy and reality" to warrant declaratory relief.  Def.'s Br. Opp'n Mot. Dismiss at 10.

Finally, Defendant argues that the Counterclaim is compulsory under Federal Rule of Civil Procedure 13(a), and if Defendant is prohibited from asserting this claim, Alcatel could be barred from raising it again in a subsequent action.  *Id.*

### *E. Plaintiff's/Movant's Reply*:

Plaintiff argues that the defendant's reply was largely unresponsive.  Plaintiff alleges that Defendant did not "address the real issue of whether the Court should exercise its discretion to issue a declaratory judgment."  Pl.'s Reply Def.'s Br. Opp'n Mot. Dismiss at 1.  Similarly, Plaintiff alleges that

8

Defendant failed to address whether it has a reasonable apprehension of litigation.  *Id.* at 1-2.  Plaintiff argues that Defendant's *res judicata* argument is irrelevant because even if Defendant was required to assert the Counterclaim, emphasizing the procedural rule ignores the merits of the Counterclaim and should not persuade this Court.  *Id.* at 2.

## II. DISCUSSION

### A. Standard of Review

For a counterclaim, a Federal Rule of Civil Procedure 12(b)(6) motion should not be granted unless it appears beyond a doubt that a defendant can prove no set of facts in support of the defendant's claim that would entitle the defendant to relief. FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  In considering a Rule 12(b)(6) motion, the Court must construe the Counterclaim in the light most favorable to the defendant, read the Counterclaim as a whole, and take the facts asserted therein as true.  *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  Conclusory allegations regarding the legal effect of the facts alleged need not be accepted.  *See Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995).

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-02 is functionally equivalent to and mirrored by Rule 57 of the Federal Rules of Civil Procedure.  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 534 n.8 (1st Cir. 1995).  Rule 57 is considered the implementation of the Declaratory Judgment Act's

remedy.  *Id.*  The Federal Declaratory Judgment Act provides that:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).  The Supreme Court said that the Declaratory Judgment Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995). Furthermore, "a district court is authorized, in the sound exercise of its discretion, to stay or dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close."  *Id.* at 288.

When determining whether to grant declaratory judgment, courts have considered (1) whether judgment would settle the controversy, (2) whether declaratory judgment would serve a useful purpose in clarifying the relations at issue, (3) whether action for declaratory relief is being used merely for procedural fencing, and (4) whether there is a more effective alternative. *See, e.g., State Farm Fire & Cas. Co. v. Hiermer*, 720 F.Supp. 1310, 1312 (S.D.Ohio 1988).  Other courts have held that a declaratory judgment is improper "where it is being sought merely to determine issues which are involved in a case already pending and can be properly disposed of therein."  *Yellow Cab. Co. v.*

10

*City of Chicago*, 186 F.2d 946, 950-51 (7th Cir. 1951).

**B. Analysis**

The Court grants Plaintiff's Motion to Dismiss the Counterclaim because Defendant's Counterclaim will be rendered moot by a decision on the merits of Plaintiff's Complaint. A "prayer for declaratory relief is redundant . . . where it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Aldens v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975). Defendant argues that the Counterclaim does not mirror the Amended Complaint. Def.'s Br. Opp'n Mot. Dismiss at 6. Count One of Defendant's Counterclaim seeks declaratory judgment that Defendant acted within its rights under the Windfall Clause. Def.'s Answer and Countercl. at 12. Count One of Plaintiff's Amended Complaint alleges that Defendant improperly exercised the Windfall Clause in breach of the Compensation Plan. Pl.'s Am. Compl. at ¶ 28. Both parties seek a judgment that their interpretation of the Windfall Clause is correct.

Count Two of Defendant's Counterclaim seeks declaratory judgment that Plaintiff waived any right he otherwise might have had to challenge the exercise of the Windfall Clause. Def.'s Answer and Countercl. at 13. Count Four of Plaintiff's Amended Complaint alleges that the letter agreements are void unconscionable contracts. Pl.'s Am. Compl. at ¶ 42. Both parties seek a judgment about whether Plaintiff waived his right

to challenge the exercise of the Windfall Clause by signing the letter agreements and accepting $400,000.00.  In addition, Count Two of Defendant's Counterclaim seeks declaratory judgment that Plaintiff waived his right to challenge the exercise of the Windfall Clause because he did not use the Compensation Plan's Interpretation and Dispute Resolution procedures.  Def.'s Answer and Countercl. at 13.

Further illustrating how the Counterclaim mirrors the Amended Complaint, the defendant's Counterclaim repeats the affirmative defenses.  Count One of the Counterclaim seeks declaratory judgment that Defendant acted properly under the Compensation Plan.  Def.'s Answer and Countercl. at 12.  As an affirmative defense, Defendant alleges that "Plaintiff's claims are barred, in whole or in part, by the express terms of the Compensation Plan."  *Id.* at 7.  Other affirmative defenses include that "Plaintiff's claims are barred, in whole or in part, by the doctrine of waiver," and "Plaintiff's claims are barred . . . by his written acceptance of the [letter agreements]."  *Id.* at 6-7.  Count Two of the Counterclaim seeks declaratory judgment that Plaintiff waived his right to challenge the exercise of the Windfall Clause.  *Id.* at 13.

Because Defendant's Counterclaim mirrors the plaintiff's Amended Complaint, and any decision resolving the Amended Complaint will render the Counterclaim moot, this Court grants Plaintiff's Motion to Dismiss the Counterclaim.  Wright & Miller suggests that in cases like these, to be safe, courts should

"deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." C. Wright and A. Miller, 6 FED. PRAC. & PROC. CIV. 2D § 1406. Historically, plaintiffs could harass a defendant by bringing an action and then dismissing the suit before trial without prejudice. *Id.* The federal rules now deprive plaintiffs of this harassment tactic. *Id.* Rule 41(a) provides that a plaintiff cannot terminate the action once the defendant has filed an answer. *Id.* Therefore, some courts hold that Rule 41(a) sufficiently protects defendants, and counterclaims for declaratory judgment involving the same transaction are redundant. *Id.*

Defendant argues that the Counterclaim should not be dismissed even if it mirrors the Amended Complaint. Def.'s Br. Opp'n Mot. Dismiss at 8. Defendant cites four cases, but at least two of these cases do not support its position. For example, the *England* court held that the "weight of authority" is "well settled" that a counterclaim involving the same matters as the affirmative defenses should not be dismissed. 158 F.Supp at 905. Defendant fails to mention, however, that the *England* case was a patent dispute.[2] Therefore, *England*'s broad language is likely referring to patent litigation in particular.

---

[2] Wright and Miller categorize patent disputes separately because of the unique issues in patent litigation. *See* C. Wright and A. Miller, 6 FED. PRAC. & PROC. CIV. 2D § 1406 (noting that counterclaims in an infringement suit can always challenge the validity of plaintiff's patent).

13

Likewise, *Iron Mountain*, also cited by the defendant, is not directly on point because the counterclaim in *Iron Mountain* did not mirror the complaint. 457 F.Supp. at 1162. The counterclaim sought more than a declaration in favor of the defendant's interpretation of the contract; it sought damages for breach of the contract by plaintiff. *Id.* Defendant fails to mention that the *Iron Mountain* court specifically held that the counterclaim raised "damages issues beyond the scope of the complaint." *Id.* In this case, Defendant does not seek damages. Instead, Defendant seeks declaratory judgment that its interpretation of the Compensation Plan is correct and that Mr. Rahrig waived any right he might have had to challenge the exercise of the Windfall Clause.

A third case in Defendant's brief states "[w]here the primary issue is one of contract interpretation, the courts are reluctant to dismiss a counterclaim for declaratory relief as redundant even when it is a near 'mirror image' of the complaint." *Univ. Patents*, 1991 WL 165071, at *1. Although this case has broad and favorable language that appears to support the defendant's position, the only case that *University Patents* cites for the above statement is *Iron Mountain*. *Id.* As discussed above, *Iron Mountain* did not involve a mirror counterclaim because the defendant sought damages "beyond the scope of the complaint." 457 F.Supp at 1162.

Defendant fails to mention that at least four cases held

14

that redundant counterclaims should be dismissed.  See *Aldens,* 524 F.2d at 51-52 (holding that "declaratory relief is redundant and became moot upon the disposition of the complaint . . . where it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim"); *Avery Dennison Corp. v. Acco Brands, Inc.*, 2000 WL 986995 (C.D.Cal. Feb. 22, 2000)(same, citing *Aldens*); *Amwest Surety Ins. Co. v. Concord Bank*, 2003 WL 553229 (E.D.Mo. Feb. 4, 2003)(same, citing, *inter alia*, *Aldens*); *John Evans Sons, Inc. v. Majik-Ironers, Inc.*, 95 F.R.D. 186, 190 (E.D.Pa. 1982)(same).

In sum, this Court grants Plaintiff's Motion to Dismiss Defendant's Counterclaim because the adjudication of Plaintiff's Complaint will render the defendant's Counterclaim moot.  A decision for the plaintiff must explain why the express terms of the Compensation Plan and the issues of waiver did not bar Plaintiff's claim.  On the other hand, a decision for the defendant must explain why either the terms of the Compensation Plan or waiver issues barred Plaintiff's recovery.  Regardless of how this Court ultimately decides Plaintiff's claim, the Opinion must explain why the affirmative defenses do or do not bar Plaintiff's recovery.

## IV. CONCLUSION

This Court grants Plaintiff's Motion to Dismiss Defendant's Counterclaim because adjudication of Plaintiff's Complaint will render the Counterclaim moot.  The Counterclaim will become moot

because this Court must address Defendant's arguments regarding waiver and the Interpretation and Dispute Resolution Clause in any final judgment on Plaintiff's Complaint.

For the foregoing reasons, it is hereby

ORDERED that Plaintiff's Motion to Dismiss Defendant's Counterclaim is GRANTED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this ___28th____ day of July, 2005.

_____/s/_____
Gerald Bruce Lee
United States District Judge

Alexandria, Virginia
07/28/05